## Dickerson v. Bowles' Executor.

(Decided February 17, 1920.)

### Appeal from Nelson Circuit Court.

Partnership—Contracts—Novation.—In a suit by a partner to recover two-thirds of the partnership profits as provided by the original contract, evidence considered and held to show that the original contract was changed by a subsequent agreement by which the partners were to share equally in the profits.

C. T. ATKINSON and MORGAN YEWELL for appellant.

KELLEY, KELLEY & BAIRD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In the year 1912, Levi P. Dickerson and J. B. Bowles leased a tract of land for a period of five years, and formed a partnership for the purpose of conducting a dairy, carrying on general farming operations, and buying and selling various kinds of live stock, etc. The contract was in writing and is as follows:

"This agreement entered into this the 30th day of December, 1912, between L. P. Dickerson of the first part and J. B. Bowles of the second part witnesseth: Whereas the parties herein named having leased from John R. Nicholls his farm do hereby form a partnership under the name of Dickerson and Bowles for the purpose of conducting a dairy, carrying on general farming operations and to buy and sell various kinds of live stock, also to keep stallions and jacks for public service.

"Said partnership is to continue until the termination of said lease. It is agreed that party of the first part is to have the active management of said business and to give all of his time and energy to furthering the best interest of same.

"In view of said party of the first part giving such services, when the business of the firm is ultimately wound up, if it be found that it has been conducted at a profit, two-thirds of said profits shall be the property of said party of the first part and the remaining one-third the property of the party of the second part, except: any profits that may be derived from the purchase and sale of stallions are to be divided equally. Service fees

from said stallions however are to go into the general fund to be divided as first stated.

"Should at the termination of the lease it be found that the business has been conducted at a loss, this shall be divided equally between the two contracting parties. The party of the second part's connection with the firm is to be only in an advisory capacity. Should one partner put more money into the business than the other, interest at legal rate is to be paid him for said money."

During the first year of the partnership the business consisted principally of conducting a dairy composed of Jersey and native cows. After that time the firm began to handle Holstein cattle, and their principal business consisted of buying, breeding and selling such cattle. While Dickerson was the active man in charge of the business, and his industry, energy and fidelity are unquestioned, it appears that when the firm began to handle Holstein cattle, Bowles made a thorough study of the business and the principal part of the buying and selling was done by him. Thereafter, the firm built up a large trade, and the business became prosperous. It seems that the partners settled their affairs at the end of each year. One of these settlements is in writing and is as follows:

"The undersigned have had a full and complete settlement of their partnership business up to January 1, 1915, and neither is indebted to the other and both are equal owners in the property of the firm of Dickerson and Bowles.

"(Signed) L. P. DICKERSON, J. B. BOWLES."

Another settlement was made on January 2, 1917, and is as follows:

"January 2d, 1917, L. P. Dickerson and J. B. Bowles have this day had a settlement of the business of the firm of Dickerson and Bowles and said L. P. Dickerson had to his credit the sum of three hundred and forty-seven dollars and sixty-five cents of the funds of said firm. This is after he had paid J. E. Newman and J. B. Bowles each the sum of $1,250.00 for a one-fifth interest in the Kaintuckee Holstein Farm. In this settlement the sum of $420.00 being rebate due on cattle by John Murphy of Wisconsin is treated as cash in said Dickerson's hands. This settlement is based on Dickerson and Bowles having taken two and one-half tons of the feed

shipped by the Louisville Cereal Company, the other seven tons and a half being taken by Kaintuckee Holstein Farm and Wilson and Bowles and the sum of $285.00 being treated in this settlement as being already in the hands of said Dickerson, the freight due on the cattle bought in Wisconsin is not affected by this settlement."

During the continuance of the partnership, Bowles was a partner with J. E. Newman under the firm name of Kaintuckee Holstein Farm. During the year 1916, Bowles and Newman sold to Dickerson a one-fifth interest in the Kaintuckee Holstein Farm for the sum of $2,500.00. Dickerson paid for this interest out of the profits of the firm of Dickerson and Bowles, as will be seen by reference to the settlement of January 2, 1917.

Bowles died on January 5, 1918. Thereupon, John S. Kelley qualified as his executer, and on January 22nd, he and Dickerson made the following settlement:

"It is agreed between L. P. Dickerson surviving member of the firm of Bowles and Dickerson, and John S. Kelley, executor of J. B. Bowles, the other member of said firm, that the bank account of said firm has been kept in the Peoples Bank of Bardstown, Ky., in the name of L. P. Dickerson for many years, and that by a settlement between the members of said firm made as of date January 2, 1917, of their business matters to January 1, 1918, there was due and owing to said Dickerson by said firm the sum of $347.65 and that during the year, 1917, by checks drawn on said account prior to January 1, 1918, L. P. Dickerson had drawn out and appropriated to his own use moneys of said firm to the amount of $643.72 and J. B. Bowles had drawn in the same way by check on said account and appropriated to his own use $500.00. That there was due to J. B. Bowles from said firm as of date January 1, 1918, the sum of $291.07 to equalize him with said Dickerson and the latter has this day drawn on said firm account and delivered to John S. Kelley, executor of J. B. Bowles a check for said sum which equalizes the two members of said firm and the balance of the assets of the firm both tangible and intangible belongs to said Bowles and said Dickerson in equal parts.

"This January 22, 1918."

A few weeks later Dickerson sold the live stock belonging to the firm, and informed the executor that he

was claiming two-thirds of the profits, but the executor declined to settle on that basis.

Basing his claim upon the original contract, Dickerson then brought suit for a settlement of the partnership and a recovery of two-thirds of the profits. The executor defended on the ground that the parties had changed the contract, and that he and Dickerson had settled the matter by the agreement of January 22, 1918, above set out. On final hearing the chancellor sustained the contention of the executor, and gave judgment accordingly. Dickerson appeals.

It is the contention of Dickerson that under the terms of the partnership agreement there could be no payment of compensation to the active partner until the business of the firm was ultimately wound up, because until then it could not be determined whether there was a profit or not; and that being true, the parties could only treat themselves as equal until the final settlement. It is further insisted that the facts do not show that any change in the contract was made.

If it had been made to appear that in the settlement made between Dickerson and Bowles, Dickerson had drawn two-thirds of the profits and Bowles one-third, and the balance of the assets represented only original capital, such a settlement would have been consistent with the terms of the original contract, but when the settlement was based on the fact that the sums withdrawn by the two partners were equal, and that they were then the equal owners in the remainder of the firm property, such a settlement was entirely inconsistent with the original contract. Not only is this true, but Dickerson stated to the executor and also to John E. Newman, a disinterested party, that he and Bowles were equal partners. Furthermore, he signed the settlement of January 22, 1918, declaring that after Dickerson had executed a check for $291.07 to the executor for the purpose of equalizing Dickerson with Bowles, "the balance of the assets of the firm, both tangible and intangible, belongs to said Bowles and said Dickerson in equal parts." When we consider not only the conduct of the parties, as evidenced by their settlements, which show that they were dealing with each other on the basis of equal shares in the partnership, but also the conduct of Dickerson in signing the settlement with the executor, and in stating to him and Mr. Newman that he and Bowles were equal partners, we

cannot escape the conclusion that the original contract was changed by the parties, and that the chancellor did not err in so holding.

Judgment affirmed.